**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

July 12, 2013

# In the Court of Appeals of Georgia

A13A0299. MARINO et al. v. CLARY LAKES HOMEOWNERS ASSOCIATION, INC.

BARNES, Presiding Judge.

Clary Lakes Homeowners Association, Inc. (the "Association") brought this action for damages and injunctive relief seeking to enforce a restrictive covenant, which concerned the parking of vehicles in garages and the use of garages for storage, against homeowners Joseph and Patricia Marino. The Marinos filed an answer and counterclaims, acknowledging that they were in violation of the restrictive covenant but contending that the Association's enforcement action and the covenant were invalid on several grounds. Following discovery, the trial court denied the Marinos' motion for summary judgment and granted in part the Association's cross-motion for summary judgment. The trial court determined that the Association's enforcement action was not barred by the two-year statute of limitation; that the restrictive covenant was exempt from the written consent requirement imposed by OCGA § 44-

5-60 (d) (4); that the covenant was validly enacted and enforceable against the Marinos under the Georgia Property Owners' Association Act (the "POA Act" or the "Act"), OCGA § 44-3-220 et seq.; that the Marinos were estopped from challenging the validity and enforceability of the covenant; that there was no evidence that the Association's denial of the Marinos' request for a variance was arbitrary, capricious, or done in bad faith; and that the Association rather than the Marinos was entitled to attorney fees under the "prevailing party" provision of the neighborhood covenants. The Marinos now appeal from the trial court's summary judgment order.

For the reasons discussed below, we conclude that for the restrictive covenant at issue to be enforceable against the Marinos, they had to agree to the covenant in writing pursuant to OCGA § 44-5-60 (d) (4), or the covenant had to be approved by at least two-thirds of the votes in the Association pursuant to OCGA § 44-3-226 (a) of the POA Act. Because the uncontroverted evidence shows that neither condition was met in this case, the restrictive covenant was unenforceable against the Marinos, and the trial court erred in concluding otherwise. Consequently, we reverse the trial court's grant of summary judgment to the Association, and its denial of summary judgment to the Marinos, on the Association's claims for damages and injunctive relief predicated on the alleged breach of the restrictive covenant, and we remand the

2

case with direction for the trial court to enter summary judgment in favor of the Marinos on those claims. We likewise reverse the trial court's grant of summary judgment to the Association on its claim for attorney fees, but we affirm the denial of summary judgment to the Marinos on their competing claim for attorney fees because a ruling on the fees issue would be premature at this point in the litigation.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial.

(Emphasis omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). With these principles in mind, we turn to the record in the present case.

*The Original and Amended Declaration.* The record shows that the original declaration of covenants for the Clary Lakes subdivision was recorded on August 7, 1987 in the Cobb County, Georgia land records (the "Original Declaration"). The

Association, previously known as the Clary Lakes Recreation Association, Inc., was charged with enforcing the protective covenants contained in the Original Declaration. Among other protective covenants, Paragraph 17 of the Original Declaration provided: "Garages may be attached or detached, but must be large enough to accommodate at least two automobiles and garage interiors shall be sheetrocked and painted." The Original Declaration did not contain any covenants requiring owners to park their vehicles in their garages and did not restrict garages from being used for storage.

The Original Declaration was amended from time to time over the years, including in 1988, 1991, 1992, and 1998. The 1998 amendment to the Original Declaration included a new Paragraph 22, which provided that any further amendment would require the approval of a majority of the members of the Association.

From 2001 to 2003, there were general discussions in the neighborhood about further changes to the Original Declaration. Ultimately, a majority of the owners and Association members voted for and approved an Amended and Restated Declaration of Protective Covenants for Clary Lakes (the "Amended Declaration") and Amended and Restated Bylaws of Clary Lakes Homeowners Association, Inc. (the "Bylaws").

4

The Amended Declaration and Bylaws were recorded on October 14, 2003 in the Cobb County land records. The Amended Declaration included a provision stating that the Association and the Clary Lakes subdivision were submitting to application of the POA Act.

The Amended Declaration replaced the Original Declaration in its entirety. One of the new provisions contained in the Amended Declaration, which is at the center of the present litigation, involved the parking of vehicles in garages and the use of garages for storage. Specifically, Section 11 (i) of the Amended Declaration provided:

> *Garage Parking.* All vehicles owned or used on a regular basis by Owners or Occupants shall be parked in garages to the extent that garage space is available and vehicles fit in the garage. Garages shall not be used for storage on a regular basis so that they become unavailable for parking cars therein. The Covenant Committee shall have the power to grant a variance to any Owner or Occupant who demonstrates special circumstances why he cannot comply with this requirement. Application for this variance must be made in writing to the Covenant Committee. The variance to the Owner or Occupant must be in writing and specify the term of the required variance.

(the "Garage Use Covenant").

*The Marinos.* The Marinos purchased their home in the Clary Lakes subdivision in 1994, when Paragraph 17 of the Original Declaration provided the only

5

restriction on garages. Because their home did not have a basement, the Marinos used their garage for storage space and parked their cars in the driveway, as permitted by the Original Declaration.

After the recording of the Amended Declaration in October 2003, the Marinos continued to use their garage for storage and to park their cars in the driveway in violation of the Garage Use Covenant. The Marinos did not vote in favor of the Amended Declaration and never gave their written consent to the Amended Declaration, including the Garage Use Covenant.

In January 2009, the Association's Covenant Committee issued a "Notice of Covenant Violation" letter to the Marinos regarding their violation of the Garage Use Covenant. The Marinos responded by submitting a written appeal to the Association's Appeals Committee. The Appeals Committee came to a decision that a violation of the Garage Use Covenant had occurred but granted the Marinos a temporary variance to allow them time to come into compliance. The Marinos requested a permanent variance from the Garage Use Covenant, but their request was denied. Ultimately, the Association, pursuant to the terms of the Amended Declaration, began to levy daily fines against the Marinos for violating the Garage Use Covenant on September 1, 2010. The Marinos refused to pay the fines, which continued to accrue.

On April 15, 2011, the Association commenced this suit for damages, injunctive relief, and attorney fees, alleging, among other things, that the Marinos had been and remained in violation of the Garage Use Covenant and owed fines that had continue to accrue since September 1, 2010. The Marinos filed an answer, raising several defenses and counterclaims. The Marinos admitted that they used their garage for storage and parked their vehicles in their driveway but asserted that the Association's enforcement action was barred by the two-year statute of limitation; that the Garage Use Covenant was unenforceable against them because they had not given their written consent to it under OCGA § 44-5-60 (d) (4) and it had not been approved by at least two-thirds of the votes in the Association under the POA Act; and that the Association's denial of their request for a permanent variance had been arbitrary, capricious, and done in bad faith. Like the Association, the Marinos sought attorney fees.

The parties filed cross motions for summary judgment. The trial court ruled that the uncontroverted evidence of record showed that the Association's enforcement action was not barred by the two-year statute of limitation; that the Garage Use Covenant was not subject to either the written consent requirement imposed by OCGA § 44-5-60 (d) (4) or the two-thirds voting requirement imposed by the POA

7

Act; and that the Association's denial of the Marinos' request for a permanent variance had not been arbitrary, capricious, or done in bad faith. Accordingly, the trial court denied summary judgment to the Marinos and granted summary judgment to the Association on its claims for damages for the nonpayment of accrued fines, injunctive relief, and attorney fees. The Marinos now appeal.

1. The Marinos first contend that the trial court erred in ruling that the Association's enforcement action was not barred by the two-year statute of limitation. They maintain that the limitation period began to run on October 14, 2003, the date when the Garage Use Covenant was recorded, because they were already using their garage for storage and parking their vehicles in their driveway at that time. Consequently, the Marinos contend that the limitation period expired on October 14, 2005, thereby barring the Association's enforcement action, which was not filed until April 15, 2011. We disagree.

All actions alleging the violation of a restrictive covenant, except for violations for failure to pay assessments or fees, must be brought within two years after the right of action accrues. See OCGA § 9-3-29 (a). The right of action accrues "immediately upon the violation of the covenant restricting land to certain uses." OCGA § 9-3-29 (c). Interpreting these statutory provisions, we have held that "a right of action based

8

on a covenant violation caused by a permanent fixture accrues when the violation first results." *Black Island Homeowners Assn. v. Marra*, 263 Ga. App. 559, 561 (1) (b) (588 SE2d 250) (2003). See *Hemley v. Liberty County*, 242 Ga. App. 881, 883-884 (2) (531 SE2d 756) (2000) (limitation period on claim that commercial fishing business violated restrictive covenant commenced when business was constructed on property, more than 20 years before plaintiffs filed suit). In contrast, a right of action based on a covenant violation "caused by a repetitive act accrues each time the distinct and separate act that constitutes an alleged breach occurs." 2 Pindar's Ga. Real Estate Law & Procedure § 19:193, n. 1 (7th ed.) (updated April 2013). See *Black Island Homeowners Assn.*, 263 Ga. App. at 561 (1) (b) (mowing of undeveloped property in violation of restrictive covenant was a "distinct, separate act that constitutes an alleged breach each time it occurs").

The present case does not involve a permanent fixture. Under the Garage Use Covenant, a violation occurs when an owner fails to park his vehicles in his garage under circumstances where storage prevents garage parking. It is undisputed that the physical dimensions of the Marinos' garage are adequate for the parking of their vehicles but that they use the space for storage of other transportable items. The contents stored in the garage have fluctuated, and the Marinos' vehicles have not

9

been permanently parked in their driveway but rather are driven to and from the property. Consequently, we conclude that each act of the Marinos parking their vehicles on their property other than in their garage, which was being used for storage, was a separate and distinct act that gave rise to a new cause of action for an alleged violation of the Garage Use Covenant. See *Black Island Homeowners Assn.*, 263 Ga. App. at 561 (1) (b). The trial court thus committed no error in ruling that the Association's enforcement action had been properly brought within the two-year statute of limitation.[1]

2. The Marinos further contend that the trial court erred in ruling that the Garage Use Covenant was not subject to either the written consent requirement imposed by OCGA § 44-5-60 (d) (4) or the two-thirds voting requirement imposed by OCGA § 44-3-226 (a) the POA Act. Because the Garage Use Covenant amended the Original Declaration in effect when the Marinos purchased their home and imposed a greater restriction on their use of their property, the Marinos argue that the Garage Use Covenant was enforceable against them only if they had given their

---

[1] The Marinos do not argue that the failure to enforce the Garage Use Covenant at an earlier date waived the Association's right to seek enforcement, and thus we do not address the issue of waiver.

10

written consent to it or if at least a two-thirds majority of the Association had approved it, neither of which occurred in this case. We agree with the Marinos.

Resolution of the Marinos' argument turns on our interpretation of several statutes.

> When interpreting a statute, we are required to consider the statute as a whole and look for the intent of the legislature. When a statute contains clear and unambiguous language, such language will be given its plain meaning and will be applied accordingly. We also must endeavor to give each part of the statute meaning and avoid constructions that make some language mere surplusage or meaningless.

(Punctuation and footnotes omitted.) *Geico General Ins. Co. v. Hosp. Auth. of Clarke County*, 319 Ga. App. 741, 743 (738 SE2d 325) (2013). Furthermore, when interpreting a statute, "[w]e must consider the consequences of any proposed interpretation and not construe the statute to reach an unreasonable result unintended by the legislature." (Citation and punctuation omitted.) *Cardinale v. City of Atlanta*, 290 Ga. 521, 524 (722 SE2d 732) (2012). Finally,

> a statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes in pari materia, are construed together, and harmonized whenever possible, so as to ascertain the legislative intendment and give effect thereto.

11

(Footnote omitted.) *Aimwell, Inc. v. McLendon Enterprises*, 318 Ga. App. 394, 397 (1) (734 SE2d 84) (2012).

When the question is whether a property owners' association has been properly established pursuant to the POA Act, the provisions of the Act "and of an instrument recorded thereto shall be liberally construed in favor of the valid establishment of [the] property owners' association[.]" OCGA § 44-3-233. On the other hand, when the issue is the more narrow one of the enforceability of a particular covenant that restricts a homeowner's lawful use and enjoyment of his land, we are mindful that "restrictions on private property are generally not favored in Georgia," and restrictive covenants "will not be enlarged or extended by construction, . . . any doubt will be construed in favor of the grantee," and the basis for restricting the owner's use of his property must be clear and without doubt. (Citation and punctuation omitted.) *Canterbury Forest Assn. v. Collins*, 243 Ga. App. 425, 427 (1) (b) (ii) (532 SE2d 736) (2000). Guided by these principles, we turn to the statutes at issue in this case.

OCGA § 44-5-60 (d) (4) provides the starting point for determining the enforceability of a restrictive covenant that amends a declaration to impose a greater restriction of the use or development of a property owner's land. That statute provides that "no change in . . . covenants which imposes a greater restriction on the use or

development of the land will be enforced unless agreed to in writing by the owner of the affected property at the time such change is made." In *Charter Club on River Home Owners Assn. v. Walker*, 301 Ga. App. 898, 899-900 (689 SE2d 344) (2009), we held that under OCGA § 44-5-60 (d) (4), a property owner who has not consented in writing to an amendment imposing a new, more restrictive covenant on his or her property is not required to follow the amendment, even if the amendment was properly enacted under the amendment provision of the homeowner association's declaration of protective covenants.

The *Charter Club* case, however, did not involve a restrictive covenant contained in a declaration of covenants governed by the POA Act, which creates a comprehensive set of rules and procedures for property owners' associations that affirmatively opt-in to the Act. See OCGA § 44-3-220 et seq. See also 1 Pindar, supra at § 7:17. Notably, OCGA § 44-3-234 of the POA Act states that "[t]he limitations provided in subsection (b) and paragraphs (1), (2), and (4) of subsection (d) of Code Section 44-5-60 shall not apply to any covenants contained in any instrument created pursuant to or submitted to this article." But OCGA § 44-3-234 cannot be read in isolation; it must be read in connection with other provisions of the Act addressing amendments. See *Aimwell, Inc.*, 318 Ga. App. at 397 (1).

13

The POA Act defines "instrument" as "the declaration, plats, and plans recorded pursuant to this article," and further provides that "[a]ny amendment . . . of any instrument shall, from the time of the recordation of such amendment or certification, be deemed an integral part of the affected instrument so long as such amendment . . . was made in accordance with this article." OCGA § 44-3-221 (17). In turn, OCGA § 44-3-226 (a) addresses the amendment of an "instrument":

> Except to the extent expressly permitted or required by other provisions of this article, the instrument shall be amended only by the agreement of lot owners of lots to which two-thirds of the votes in the association pertain or such larger majority as the instrument may specify[.]

Taken together, OCGA §§ 44-3-221 (17) and 44-3-226 (a) provide that an amendment to an instrument is deemed part of the instrument and enforceable under the Act only if the amendment is approved by a minimum of a two-thirds majority. When these two statutory provisions are also read in conjunction with OCGA § 44-3-234, it follows that an amendment to an instrument to impose a new restrictive covenant, such as the Garage Use Covenant, is exempted from the application of the written consent requirement of OCGA § 44-5-60 (d) (4) only if the covenant is approved by at least a two-thirds majority.

The Association, however, contends that an exception to the two-thirds voting requirement applied to the adoption of the Garage Use Covenant. As noted above, OCGA § 44-3-226 (a) imposes a two-thirds minimum voting requirement, "[e]xcept to the extent expressly permitted or required by other provisions" of the Act. OCGA § 44-3-222 of the POA Act, relied upon by the Association, addresses such an exception for an amendment made to an existing declaration of covenants to "submit" to governance of the Act. The statute provides:

> A property owners' development shall come into existence upon either the recordation of the declaration pursuant to this article *or the amendment of a recorded declaration in accordance with Code Section 44-3-235. Any declaration or amendment intending to bring or avail a development of the benefits and provisions of this article shall state an affirmative election to be so governed.* Any original declaration shall be duly executed by or on behalf of all of the owners of the submitted property. *Any such amendment to an existing declaration shall be executed in accordance with the terms of the recorded declaration being amended thereby.*

(Emphasis supplied.) In turn, OCGA § 44-3-235 (a) provides in relevant part:

> This article shall also apply to any association of owners subject to a recorded declaration of covenants upon property, which covenants are administered by an owners' association in which membership is mandatory for all owners of lots in the development, which declaration

15

is amended in accordance with Code Section 44-3-222 in order to submit the property owners' association to this article; *provided, however, that any amendment must conform the instrument creating the property owners' association to this article, and the property owners' development shall thereafter be deemed to be submitted to this article.*

(Emphasis supplied.)

Construed together, OCGA §§ 44-3-222 and 44-3-235 (a) provide that when an existing declaration is amended to include a provision affirmatively electing to be governed by the POA Act, such an amendment to the existing declaration is to be adopted in accordance with the voting requirements found in the existing declaration itself. Thus, where, as here, the existing declaration (i.e., the Original Declaration) allowed for the adoption of amendments by a majority vote of the members of the property owners' association, an amendment affirmatively submitting the association to governance by the POA Act could be accomplished by majority vote.

It does not follow, however, that an amendment imposing a new restrictive covenant on property owners, adopted at the same time as the amendment submitting the property owners' association to governance under the POA Act, can itself be accomplished by majority vote. OCGA § 44-3-222 carves out an exception to the two-thirds voting requirement imposed by the POA Act only for an "amendment

16

intending to bring or avail a development of the benefits and provisions of [the Act]," and an amendment imposing a new restrictive covenant on property owners does not fall within that category of amendment. Moreover, OCGA § 44-3-235 (a), when read together with the other provisions of the POA Act, contemplates that the exception to the two-thirds voting requirement applies only to amendments that "conform the instrument" to the Act, not to additional amendments that go beyond conforming the instrument to the terms and provisions of the Act, such as an amendment imposing a new restrictive covenant.

For these combined reasons, we conclude that the Garage Use Covenant was subject to the two-thirds voting requirement imposed by OCGA § 44-3-226 (a) of the POA Act. And because a two-thirds majority never approved the Garage Use Covenant, OCGA § 44-3-234 of the Act did not exempt the Garage Use Covenant from the prohibition against imposing greater restrictions on the use of land without the property owner's consent that is set forth in OCGA § 44-3-222 (d) (4). Accordingly, in light of the uncontroverted evidence showing that the Marinos never gave their written consent to the Garage Use Covenant and a two-thirds majority never approved it, the Garage Use Covenant is unenforceable against them as a matter of law, and the trial court erred in ruling otherwise.

3. The Marinos also contend that the trial court erred in ruling that they were precluded from challenging the enforceability of the Garage Use Covenant under the doctrine of promissory estoppel because they had abided by other covenants contained in the Amended Declaration. Again, we agree with the Marinos.

"Landowners may be bound to uphold legally insufficient covenants under the doctrine of promissory estoppel[.]" *Duffy v. Landings Assn.*, 245 Ga. App. 104, 108 (536 SE2d 758) (2000).  A promissory estoppel claims requires a showing of the following: (1) the defendant made a promise; (2) the defendant should have known that the plaintiff would rely on the promise; (3) the plaintiff did in fact rely on the promise to his or her detriment; and (4) injustice can be avoided only by enforcing the promise. *Canterbury Forest Assn. v. Collins*, 243 Ga. App. 425, 428 (2) (532 SE2d 736) (2000). See OCGA § 13-3-44 (a). A promise made by the defendant thus is an essential element of a promissory estoppel claim, and "while the promise need not meet the formal requirements of a contract, it must, nonetheless, have been communicated with sufficient particularity to enforce the commitment." *Mooney v. Mooney*, 245 Ga. App. 780, 783 (538 SE2d 864) (2000). It follows that defendant landowners "cannot be bound by a legally ineffective covenant to which they never agreed." *Duffy*, 245 Ga. App. at 108.

18

Here, the uncontroverted evidence shows that the Marinos never signed, voted for, or otherwise agreed to the adoption of the Garage Use Covenant, and they have continued to use their garage for storage and to park cars in their driveway. And while the Marinos may have chosen to abide by other covenants contained in the Amended Declaration instead of risking an enforcement action by the Association for those additional covenant violations, that did not in any manner imply that the Marinos were agreeing that the Garage Use Covenant was enforceable against them. Nor is there any evidence that the Association relied on any promise made by the Marinos regarding the Garage Use Covenant to the detriment of the Association.

The Association argues, however, that the Marinos are estopped from challenging the enforceability of the Garage Use Covenant because they sought a permanent variance from the Association. But the record reflects that in seeking the variance, the Marinos specifically noted that they had lived in their home prior to the Garage Use Covenant and believed that it could not be validly enforced against them. Thus, in seeking a variance, the Marinos clearly were not agreeing to the validity and enforceability of the Garage Use Covenant.

In light of this record, the trial court erred in concluding that the Marinos were precluded from challenging the enforceability of the Garage Use Covenant under the

doctrine of promissory estoppel.[2] Compare *Canterbury Forest Assn.*, 243 Ga. App. at 428 (2) (landowners were estopped from challenging validity of renewal of restrictive covenants even though renewal was legally ineffective, where they had signed an agreement extending the term of the covenants and had continued to abide by and enforce the covenants in reliance on their continued viability).

4. The Marinos also make the alternative argument that if the Garage Use Covenant was enforceable against them, the trial court erred in concluding that there was no evidence to support their contention that the Association's failure to grant them a permanent variance was arbitrary, capricious, and done in bad faith. In light of our decision supra in Divisions 2 and 3 that the Garage Use Covenant was unenforceable against the Marinos and that they were not estopped from making that

---

[2] The trial court also concluded that the Marinos were estopped from challenging the Garage Use Covenant because the Amended Declaration contained a provision stating that any amendment not challenged within one year of its recording would be presumed to be validly adopted, and the Garage Use Covenant was not challenged by the Marinos during that time period. However, the language in the Amended Declaration created only a rebuttable presumption, see OCGA § 44-3-226 (f), and the Marinos overcame that presumption and showed that the Garage Use Covenant was unenforceable against them as a matter of law, as explained supra in Division 2. The trial court therefore erred in ruling that the Marinos were estopped from challenging the Garage Use Covenant based on the rebuttable presumption created by the Amended Declaration.

argument, the Marinos' enumeration of error regarding the failure to grant a permanent variance is moot and need not be addressed.

5. Lastly, the Marinos contend that the trial court erred in granting summary judgment to the Association and denying it to the Marinos on their competing claims for attorney fees under the "prevailing party" provision of the Amended Covenants. Because the trial court erred in granting summary judgment to the Association on its claims for damages and injunctive relief for breach of the Garage Use Covenant, the trial court likewise erred in granting the Association summary judgment on its claim for attorney fees.

However, the trial court did not err in denying summary judgment to the Marinos on their claim for attorney fees. The Association has a separate claim against the Marinos for the alleged breach of a settlement agreement that remains pending in the trial court, and the outcome with regard to that claim may affect who is deemed the "prevailing party" in this litigation. It follows that an award of attorney fees to either party would be premature at this point in the litigation.

*Judgment affirmed in part; reversed in part; and case remanded with instruction. Miller, J., concurs. Ray, J., concurs fully and specially.*

21

A13A0299. MARINO et al. v. CLARY LAKES HOMEOWNERS
        ASSOCIATION, INC.

Ray, Judge, concurring fully and specially.

Although I fully concur in the majority's opinion, I write separately to address arguments put forth by the Appellee (the "Association") regarding the interplay between OCGA §§ 44-5-60(d)(4) and 44-3-220, et. seq., the Georgia Property Owners Association Act (the "POA"). The election to submit to the POA was pursuant to a majority vote of the Association's members in 2003, the same vote which also saw the adoption of the restrictive "Garage Use" provision.

The Association argued and the trial court accepted that because the two actions were adopted simultaneously and in the same document, that the Garage Use provision was not subject to the requirements of § 44-5-60(d)(4) or the two-thirds vote requirement found in the POA, § 44-3-226.  This clearly cannot be so.

The Association may not eviscerate the statutes, picking and choosing which provisions it chooses to follow. When the POA election occurred, it was pursuant to § 44-3-222, which requires the adoption amendment to "be executed in accordance with the terms of the recorded declaration being amended thereby." In other words, if a preexisting declaration exists, the vote takes place pursuant to procedure set forth in the declaration.  The preexisting declaration, as of 1998, required a majority vote of the Association members to change the covenants.

However, § 44-5-60(d)(4) still applies, making any covenant imposing a greater restriction on the land unenforceable as to affected owners who do not agree in writing.

The Association obviously disfavors the application of § 44-5-60(d)(4), and it seeks to avoid it by pointing to § 44-3-234 of the POA, which states that § 44-5-60(d)(4) does not apply to "any covenants contained in any instrument . . . submitted to this article." However, this provision of the POA can only apply *after* the POA is adopted, since the POA is unenforceable to homeowners' associations who have not properly submitted to its terms. Assuming the Association has completed its conversion to the POA, then the POA provision of § 44-3-226 must also apply. Because § 44-3-226 requires a two-thirds majority vote to pass an amendment to the covenants and the Garage Use provision only received a bare majority vote, the Garage Use restriction would not be enforceable against any association member, let alone those who did not agree in writing. Effectively, § 44-3-234 and the rest of the POA is a package deal that only becomes enforceable *after* an association amends its declaration to come into the POA.

If the Garage Use and the POA provisions are adopted one before the other, the Association runs into another predicament, which is also fatal to its Garage

2

Use provision. If the Association adopts the Garage Use provision first, then OCGA § 44-5-60 controls and the Marinos must agree in writing so as to be bound by the provision. If the Association adopts the POA first, then § 44-5-60 no longer hinders the Association; however, the POA § 44-3-226 requiring a two-thirds majority vote also kicks in, thus thwarting the Association's ability to enforce the Garage Use provision against the Marinos. The Association cannot enforce the Garage Use provision under either scenario.