**SECOND DIVISION**
**MARKLE, J.,**
**LAND and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 21, 2025**

# In the Court of Appeals of Georgia

A24A1751. VAUGHN et al. v. WINDFIELD HOMEOWNERS ASSOCIATION, INC.

MARKLE, Judge.

Homeowners Gregory and Jodie Vaughn appeal from the trial court's denial of their motion for summary judgment and the grant of summary judgment to the Windfield Homeowners Association in this dispute over amendments to the neighborhood covenants that prevent them from using their home as a short-term rental property. For the reasons that follow, we conclude the amendments were properly enacted and the Vaughns were subject to the restrictions. Accordingly, we affirm.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review a grant or denial

of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant." (Citation omitted.) *Salter v. St. Charles Homeowners Assn.*, 368 Ga. App. 504, 506 (890 SE2d 391) (2023). And, "[i]n Georgia, a trial court's findings of fact after a declaratory-judgment hearing are analogous to a jury verdict and will not be interfered with if there is any evidence to support them. But we review the trial court's conclusions of law de novo." (Citations and punctuation omitted.) *Moye v. NorthHaven Homeowners Assn.*, 370 Ga. App. 544, 545-546 (897 SE2d 604) (2024).

So viewed, the record shows that, in 1987, the developer of the land comprising the Windfield subdivision recorded a Declaration of Protective Covenants ("the 1987 declaration"), setting out the use of the land, imposing certain limits not relevant here, and creating an architectural committee.[1] The covenants were to run for 20 years, with automatic renewals thereafter "unless an instrument signed by a majority of the then owners of the lots has been recorded, agreeing to change said covenants in whole or in part." Sometime over the next few years, the property owners

---

[1] Although the Vaughns argue that the 1987 declaration did not impose any leasing restrictions, the document did prohibit any conduct that could be deemed a nuisance.

organized an owners' association, elected a board, opened bank accounts, imposed and collected assessments, and managed the common areas.

In 2023, the Vaughns purchased one of the lots in the Windfield subdivision. It is undisputed that the Vaughns paid assessments on the property as directed by the existing owners' association. The seller's disclosure and the Vaughns' closing documents listed the association as mandatory and the closing documents also included a rider that required compliance with the obligations imposed by any homeowners' association or covenants.[2] Following the purchase, the Vaughns began to use the home as a short-term rental.

Thereafter, the Windfield property owners sought to amend the 1987 declaration; create and incorporate a mandatory property owners' association ("the Association"), and adopt the Property Owners' Association Act ("the Act");[3] and impose restrictive covenants that banned short-term rentals. The Vaughns did not consent to any of these actions, but a two-thirds majority of the property owners voted in favor of amending the 1987 declaration to create a mandatory homeowners'

---

[2] The parties dispute whether the association was, in fact, mandatory.

[3] See OCGA § 44-3-220 et seq.

association, incorporate the Association, and adopt the Act. The Association then filed its articles of incorporation and immediately recorded a restrictive covenant entitled First Amendment to the 1987 Declaration ("the Amendment"), which barred short-term rentals.

The Vaughns filed suit against the Association, seeking a declaratory judgment that the Amendment was invalid. Both the Vaughns and the Association moved for summary judgment, and, following a hearing, the trial court granted the Association's motion and denied the Vaughns' motion.[4] The trial court found that only a majority vote was required to amend the 1987 declaration, membership in the newly formed Association could be implied, and the Association substantially complied with the Act's requirements. Accordingly, the trial court found the Vaughns were subject to the new restrictive covenants. The Vaughns now appeal.

In related enumerations of error, the Vaughns argue that the Association could not impose new restrictions on the use of their property without their consent unless the Association was subject to the Act, which it was not because: (1) the 1987 declaration did not satisfy the statutory definition of a "declaration"; (2) the

---

[4] There is no transcript of the hearing in the record.

Association was not properly incorporated; and (3) there could be no implied consent to membership in the Association nor any implied covenant. The Vaughns contend that the cases on which the trial court relied, *Ochoa v. Coldwater Creek Homeowners Assn.*, 361 Ga. App. 267 (863 SE2d 730) (2021), and *Rice v. Lost Mountain Homeowners Assn.*, 269 Ga. App. 351 (604 SE2d 215)(2004), do not control the outcome of their case. Finally, the Vaughns further assert that the trial court must make specific findings to determine that the Association substantially complied with the Act, and that the trial court improperly disregarded evidence to reach its conclusion.[5]

"[T]he general rule is that the owner of land has the right to use it for any lawful purpose[,]" and any restrictions on that right cannot be imposed without the owner's consent. (Citation and punctuation omitted.) *Charter Club on River Home Owners Assn. v. Walker*, 301 Ga. App. 898, 899 (689 SE2d 344) (2009); OCGA § 44-5-60 (d) (4) (2017). However, there is an exception to this rule when a homeowners association is "created pursuant to or submitted to" the Act. OCGA § 44-3-234.

---

[5] The Vaughns complain that the trial court disregarded testimony that the original owner's association was not mandatory. Given our conclusion, infra, that the property owners substantially complied with the requirements to amend the 1987 declaration, and to create and incorporate a mandatory homeowner's association, this dispute does not change the outcome.

There is no dispute that the Vaughns did not consent to the amended covenants. Thus, the Association must show that the Act applied in order to impose new restrictive covenants. OCGA § 44-3-234.

The resolution of that question requires that we engage in statutory interpretation. When we interpret statutory language, we

> presume that the General Assembly meant what it said and said what it meant. And toward that end, we must afford the statutory text its plain and ordinary meaning, consider the text contextually, read the text in its most natural and reasonable way, as an ordinary speaker of the English language would, and seek to avoid a construction that makes some language mere surplusage.

(Citations, punctuation, and footnotes omitted.) *Monumedia II, LLC v. Dept. of Transp.*, 343 Ga. App. 49, 51–52 (1) (806 SE2d 215) (2017). "[A] statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes in pari materia, are construed together, and harmonized whenever possible, so as to ascertain the legislative intendment and give effect thereto." (Citation and punctuation omitted.) *Aimwell, Inc. v. McLendon Enterprises*, 318 Ga. App. 394, 397 (1) (734 SE2d 84) (2012); see also *State v. Cook*, 317 Ga. 659, 660 (1) (893 SE2d 670) (2023) ("For context, we may look to other

provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question.") (citation and punctuation omitted).

Here, the relevant statutes provide that the Act applies to

all property which is submitted to this article. This article shall also apply to any association of owners subject to a recorded declaration of covenants upon property, which covenants are administered by an owners' association in which membership is mandatory for all owners of lots in the development, which declaration is amended in accordance with Code Section 44-3-222 in order to submit the property owners' association to this article[.]

OCGA § 44-3-235 (a).

Section 44-3-222 provides,

A property owners' development shall come into existence upon either the recordation of the declaration pursuant to this article or the amendment of a recorded declaration in accordance with Code Section 44-3-235. Any declaration or amendment intending to bring or avail a development of the benefits and provisions of this article shall state an affirmative election to be so governed. Any original declaration shall be duly executed by or on behalf of all of the owners of the submitted property. Any such amendment to an existing declaration shall be

executed in accordance with the terms of the recorded declaration being amended thereby.

Our legislature has further instructed that we are to liberally construe the statutory requirements when determining whether an association has been established properly. *Marino v. Clary Lakes Homeowners Assn.*, 322 Ga. App. 839, 845 (2) (747 SE2d 31) (2013), overruled in part on other grounds by *S-D RIRA, LLC v. Outback Property Owners' Assn.*, 330 Ga. App. 442, 460 (5) (765 SE2d 498) (2014); see also *Howell v. Lochwolde Homeowners Assn.*, 355 Ga. App. 678, 681 (1) (b) (845 SE2d 410) (2020); OCGA § 44-3-233. Moreover, substantial compliance with the requirements is sufficient. OCGA § 44-3-233.

The statutes focus on the existence of a declaration as the starting point for submission to the Act. "Declaration" is a term of art, and is defined as "the recordable instrument creating covenants upon property which covenants are administered by a property owners' association in which membership is mandatory for all owners of lots in the property owners' development." OCGA § 44-3-221 (6).

The 1987 declaration did not constitute a "declaration" under the Act because it was not administered by an association with mandatory membership. OCGA § 44-3-

221 (6). But, importantly, the 1987 declaration set out the means to amend the document by a majority vote.[6] In this case, two-thirds of the property owners voted to amend the 1987 declaration to form a mandatory homeowners' association and to be governed by the Act. See OCGA § 44-3-226 (a) (1) (requiring two-thirds vote to amend an instrument); § 44-3-221 (17) (defining "instrument" to include declarations); OCGA § 44-3-221 (18) ("'Property owners' development' or 'development' means real property which contains lots and which may contain common area located within Georgia and subject to a declaration and submitted to this article."); see also *Ochoa v. Coldwater Creek Homeowners' Assn.*, 361 Ga. App. 267, 272 (2) (863 SE2d 730) (2021) (noting that two-thirds majority approval was sufficient to amend the covenants and adopt the Act, and consent of all owners was not required); *Marino*, 322 Ga. App. at 846-848 (2) (holding that amendment to declaration to adopt Act and impose restrictive covenant must be approved by two-thirds of the owners). And the Amendment was promptly recorded. OCGA §§ 44-3-222; 44-3-235 (a). The Amendment is a "declaration" as that term is defined in the Act.

---

[6] The 1987 declaration, like other covenants, is a contract, and we apply our usual rules of contract interpretation when we consider its terms. *Pasha v. Battle Creek Homeowners Assn.*, 350 Ga. App. 433, 437 (1) (829 SE2d 618) (2019). Here the plain language of the declaration provided that it could be amended by a majority vote.

We thus conclude that the Windfield property owners properly amended the 1987 declaration to create a mandatory association, which then enabled the Association to submit to the Act. This outcome is consistent with the Act's provision to liberally construe its requirements and that "any defects in [the declaration] or want of conformity with this article may be cured by an amendment thereto duly executed by the association and recorded[.]" OCGA § 44-3-233. That is exactly what has occurred here.

We are unpersuaded by the Vaughns' argument that the 1987 declaration could not be amended to adopt the Act because the relevant statutes only apply to an amendment of a "declaration" as that term is defined in the Act. The homeowners here amended the 1987 declaration to create a homeowners association with mandatory membership, they recorded that declaration, and they indicated in that declaration that they adopted the Act. OCGA §§ 44-3-222; 44-3-235 (a). To adopt the Vaughns' interpretation of these statutes would lead to the nonsensical result that no homeowners association could avail itself of the Act if its original declaration of covenants did not satisfy the statutory definition of "declaration," regardless of any

10

attempt to amend the document. Moreover, the Vaughns' interpretation ignores the statutory mandate that

> [s]ubstantial compliance with the requirements of this article for the establishment of a property owners' association shall suffice to being property described in an instrument recorded pursuant to this article within the purview and application of this article; and any defects in such instrument or want of conformity with this article may be cured by an amendment thereto duly executed by the association and recorded[.]

OCGA § 44-3-233.

We further conclude that the Association was properly formed as a nonprofit corporation, as required by the Act. See OCGA § 44-3-227 (a) ("Prior to submission to this article, the association shall be duly incorporated either as a business corporation under Chapter 2 of Title 14 or as a nonprofit membership corporation under Chapter 3 of Title 14, as amended."); see also *Howell*, 355 Ga. App. at 680 (1) (b). OCGA § 14-3-601 (b), which applies to nonprofit corporations, provides that "[n]o person shall be admitted as a member [of a nonprofit corporation] without his or her consent." That consent can be express or implied. See OCGA § 14-3-601, comment.

11

Here, the record reflects that the Vaughns' deed, closing documents, and the seller's disclosure alerted them to the existence of a owners association and certain restrictive covenants applicable to the community. And the Vaughns acted in conformity with the existence of, and their membership in, the original association when they paid the assessments.[7] Thus, they impliedly consented to be a member of the original association, and they were bound when the association amended the 1987 declaration to form a mandatory association and incorporate under the Act.[8] Cf. *Sager v. Ivy Falls Plantation Homeowners' Assn.*, 339 Ga. App. 111, 115-116 (793 SE2d 455) (noting that newly formed corporation, approved by majority of members of original corporation, was liable for debts of former corporation as it was merely a continuation of original corporation); see also OCGA § 44-3-226 (e) (approval to amend the declaration can be implied where the owner fails to respond to the proposed amendment).

---

[7] The Vaughns take issue with this evidence because the seller's disclosure, indicating the association was mandatory, is inadmissible hearsay. But that evidence is not being used to show that there was, in fact, a mandatory association, but rather that the Vaughns were on notice of, and participating in, the existing association.

[8] The Association argues that the theory of implied covenants can bind the Vaughns under the facts of this case. Given our conclusion above, we need not consider whether this theory would be applicable here.

In sum, the Association amended the 1987 declaration to conform with the Act's requirements, and substantially complied with the Act at the time of incorporation. Because we must liberally construe those statutory requirements with the presumption in favor of a valid amendment, we conclude that the Association was properly formed and the Amendment properly enacted such that the Vaughns are subject to the new restrictions. OCGA § 44-3-233; *Howell*, 355 Ga. App. at 681 (1) (b); *Marino*, 322 Ga. App. at 845 (2).[9] Accordingly, the Association was entitled to summary judgment, and we affirm.

*Judgment affirmed. Land and Davis, JJ., concur.*

---

[9] Notably, the record does not reflect that the Vaughns requested findings of fact and conclusions of law. Nevertheless, a reading of the trial court's order shows that the trial court made the necessary findings. It set out the relevant law, reviewed the applicable facts, and found the Association substantially complied with the Act's requirements. Compare *Howell*, 355 Ga. App. at 682 (1) (b) (trial court did not make necessary findings where it stated only that the association's actions were "reasonable.").