**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 7, 2012**

# In the Court of Appeals of Georgia

A12A1415.  AIMWELL, INC. et al. v. McLENDON ENTERPRISES, INC. et al.   DO-065

A12A1416.  McLENDON ENTERPRISES, INC. et al. v. AIMWELL, INC. et al.   DO-066

DOYLE, Presiding Judge.

In this worker's compensation case, the administrative law judge ("ALJ") awarded benefits to Orlando Gaffney, an injured employee of Aimwell, Inc., against both Aimwell and Aimwell's customer, McLendon Enterprises, Inc. ("McLendon"), in equal parts, finding that Gaffney was a joint employee of both entities at the time of his injury. The Appellate Division of the State Board of Worker's Compensation upheld the factual findings of the ALJ award, but set aside the equal liability apportionment, concluding that Aimwell was required to pay for 100 percent of the claim pursuant to OCGA § 34-9-224. The superior court affirmed the Board's

decision, and Aimwell filed an application for discretionary appeal, which this Court granted. Aimwell and its insurer appeal in Case No. A12A1415, arguing that the superior court applied the incorrect standard of review and misapplied the borrowed servant doctrine and OCGA § 34-9-224. McLendon and its insurer cross-appeal in Case No. A12A1416, arguing that Gaffney was not McLendon's borrowed servant at the time of his injury. For the reasons that follow, we affirm.

The record shows that Aimwell was a truck and driver leasing company, which provided hauling services to road contractors, including dump trucks and licensed drivers. Aimwell's main customer was McLendon, a road grading and utility contractor, which had some of its own trucks and drivers ; Aimwell's and McLendon's offices were located in the same building and owned by a brother and sister. McLendon required Aimwell to provide proof of liability and worker's compensation insurance for Aimwell's employees before using them.

Gaffney was employed by Aimwell as a truck foreman, which position required him to assign equipment and drivers to jobs, handle hiring and discipline of employees, and supervise the drivers; he also operated dump trucks and other equipment as necessary, approximately three or four times per month. When Gaffney did operate equipment, he continued to act as supervisor for Aimwell and was

available to other Aimwell drivers through radios.[1] Aimwell paid Gaffney at a set hourly rate, regardless of whether he operated equipment; Gaffney was never paid by McLendon.

On January 16, 2009, after Gaffney assigned all available Aimwell drivers to various jobs, a McLendon supervisor asked Gaffney whether he would be willing to drive a McLendon truck, and Gaffney agreed. While doing so, Gaffney was critically injured in a single-vehicle accident. Following the accident, a McLendon supervisor completed Gaffney's time sheet for the day, assigning one hour to Aimwell for performing his supervisory duties and ten and a half hours of driving time for McLendon. Aimwell billed McLendon for ten and a half hours of Gaffney's time, and McLendon reimbursed Aimwell for that amount. Aimwell then paid Gaffney for a total of eleven and a half hours of work for that day.

Aimwell's workers' compensation insurer, Graphic Arts Mutual Insurance Company ("Graphic Arts"), accepted Gaffney's claim and paid all benefits owed to Gaffney pursuant to the Act. Aimwell and Graphic Arts then sought a judicial determination regarding whether McLendon was liable for the claim and, if so, in

---

[1] According to an Aimwell supervisor, Gaffney's first priority was Aimwell business.

what proportion. Following a hearing, the ALJ entered an award finding that Gaffney was a borrowed servant of McLendon because at the time: (1) McLendon "exercised nearly complete control over the occasion of [Gaffney]'s work; (2) Gaffney was working for McLendon and performing no work for Aimwell; (3) Aimwell exercised no control over Gaffney's work; and (4) McLendon had the right to fire Gaffney. The ALJ also concluded that because there was "[a] near complete blend of the functions of the two companies," and because Gaffney was still required to act as truck supervisor for Aimwell, Gaffney was jointly employed by Aimwell and McLendon at the time of the accident. Therefore, the ALJ determined that Aimwell and McCLendon were equally liable for Gaffney's claim.

The Appellate Division agreed with the ALJ's factual findings, concluding that "at the time of his accident[, Gaffney] was a joint employee[,] and both employer/insurers are subject to the provisions of OCGA § 34-9-224." Finding that because "the burden of income and medical benefits rests entirely with [Aimwell,]" the Appellate Division concluded that Aimwell's burden of compensation was 100 percent.[2] Both Aimwell and McLendon appealed to the superior court, which affirmed

_____

[2] The order of the Appellate Division noted that because Aimwell was receiving the benefit of Gaffney's services as truck supervisor as well as the income stream from McLendon based on Gaffney's driving, the fact that the 100 percent

4

the Appellate Division's finding of joint employment and 100 percent allocation of liability to Aimwell under OCGA § 34-9-224. This appeal followed.

*Case No. A12A1415*

1. Aimwell and Graphic Arts argue that the superior court erred by affirming the Appellate Division's finding that Aimwell was required to bear 100 percent of Gaffney's compensation claim pursuant to OCGA § 34-9-224. We disagree.

Notably, Aimwell and Graphic Arts do not dispute that Gaffney was in the joint service of Aimwell and McLendon at the time of his injury. Instead, they challenge the 100 percent liability apportionment to Aimwell based on the finding that Aimwell had sole "wage liability" to Gaffney.

OCGA § 34-9-244 provides:

> Whenever any employee whose injury or death is compensable under this chapter shall at the time of the injury be in the joint service of two or more employers subject to this chapter, *such employers shall contribute to the payment of such compensation in proportion to their wage liability to such employee*; provided, however, that nothing in this Code section shall prevent any reasonable arrangement between such

___

allocation of liability to Aimwell resulted in a windfall to McLendon did not require a different allocation, which would be less reasonable than the apportionment dictated by OCGA § 34-9-224.

5

employers for a different distribution as between themselves of the ultimate burden of compensation.[3]

The parties disagree as to the meaning of this statute. McLendon argues that its plain terms require the conclusion that Aimwell had 100 percent wage liability, while Aimwell contends that the superior court's finding conflicts with the plain language of the statute and is contrary to legislative intent.

Our analysis of this issue begins "with the 'golden rule' of statutory construction, which requires us to follow the literal language of the statute unless it produces contradiction, absurdity[,] or such an inconvenience as to insure that the legislature meant something else."[4] Further, we are required to

> look diligently for the intention of the General Assembly. When the language of a statute is plain and unambiguous and not leading to an absurd result, it evidences the legislative intent[,] which is not to be contravened. We also must endeavor to give each part of the statute meaning and avoid constructions that make some language mere surplusage or meaningless. Furthermore, a statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes in pari materia, are

---

[3] (Emphasis supplied.)

[4] *Spectera, Inc. v. Wilson*, ___ Ga. App. ___, ___ (1) (730 SE2d 699) (2012).

6

construed together, and harmonized wherever possible, so as to ascertain the legislative intendment and give effect thereto.[5]

The language of OCGA § 34-9-224 is plain, unambiguous, and clearly indicates the legislative intent. The statute states that in the case of joint employment, each employer is required to contribute to the compensation to an injured employee under the Act in proportion to its responsibility for paying the employee's wages. The phrase "wage liability" is not defined in the Act, but the term "wage" in OCGA § 34-9-260 has been interpreted to mean "any payment by the *employer* to the *employee* for services rendered in the course of employment that constitutes a net economic gain to the employee."[6]

Here, although McLendon paid Aimwell for Gaffney's services, Aimwell alone paid Gaffney's wages. Aimwell paid him by the hour at a set hourly rate, regardless of whether he served solely as the truck supervisor or also operated equipment for a customer. There is no evidence that McLendon had any obligation to pay Gaffney or that Aimwell would fail to pay Gaffney if McLendon did not pay Aimwell for his

---

[5] (Punctuation omitted.) Id.

[6] (Punctuation omitted; emphasis supplied.) *Caremore, Inc./Wooddale Nursing Home v. Hollis*, 283 Ga. App. 681, 686 (3) (642 SE2d 375) (2007).

7

time. And although Aimwell and McLendon could have made a reasonable arrangement for a different burden of compensation distribution as provided for in OCGA § 34-9-224, they did not do so. Finally, McLendon specifically required that Aimwell provide worker's compensation insurance for its employees, including Gaffney. Under these circumstances, we conclude that Aimwell had sole wage liability to Gaffney.[7]

Relying on *Bennett v. Browning*,[8] Aimwell argues that the actual payment of wages in the context of the borrowed servant doctrine is not material. In *Bennett*, the Board concluded that the employee was a borrowed servant and not a joint employee of his special and general employers at the time of the accident, and the superior court amended the award to reflect that the employee was in fact a joint employee at the relevant time.[9] This Court reversed the superior court, concluding that "the evidence did not demand a finding that the employee was, at the time of his injury, in the *joint* employment of [his special and general employer] within the purview of OCGA § 34-

---

[7] See OCGA § 34-9-224.

[8] 196 Ga. App. 158 (395 SE2d 333) (1990).

[9] See id. at 158.

8

9-224."[10] The Court noted that "[t]he payment of the employee's wages by [the special employer to the general employer] does not require a contrary finding."[11] This statement merely indicates that the issue of which employer paid the employee does not determine whether the employee was jointly employed at the time of the injury.

Aimwell's misplaced reliance on *Bennett* is based upon conflation of the borrowed servant and joint employment doctrines. The borrowed servant doctrine provides that if an employee is injured while in the employ of his special (or "borrowing") employer,[12] he is precluded from bringing a tort action against the special employer and must proceed under the Worker's Compensation Act.[13] "Ordinarily, when one lends his servant to another for a particular employment, the servant will be dealt with as a servant of the person to whom he is lent, although he

---

[10] (Emphasis in original.) Id. at 159.

[11] Id.

[12] "'In order for an employee to be a borrowed employee, the evidence must show that (1) the special master had complete control and direction of the servant for the occasion; (2) the general master had no such control; and (3) the special master had the exclusive right to discharge the servant. All of these elements must exist and the element of the right to control relates specifically to the occasion when the injury occurred.'" *Coca-Cola Co. v. Nicks*, 215 Ga. App. 381, 382 (450 SE2d 838) (1994).

[13] See *U. S. Fidelity & Guaranty Co. v. Forrester*, 230 Ga. 182, 185 (196 SE2d 133) (1973).

remains the general servant of the person who lent him."[14] "An *employee, [however,]*
*working as a borrowed servant, may recover for injuries sustained in connection with*
*his work from either his general or special employer, or in some instances, both.*
Such recovery, however, is limited to those benefits available under workers'
compensation law."[15] If a borrowed servant is not found to be a joint employee at the
time of the injury, the special employer is fully responsible for compensating the
injured employee, regardless of whether the special employer pays the employee
directly.[16] On the other hand, if a borrowed servant *is* found to be jointly employed
by his general and special employers, then each employer is required to contribute to
the employee's compensation under the Act in proportion to its wage liability
pursuant to OCGA § 34-9-224.

2. Aimwell argues that the Appellate Division relied upon an erroneous legal
theory when it concluded that Aimwell had sole wage liability to Gaffney for
purposes of apportioning liability pursuant to OCGA § 34-9-224 based upon its

---

[14] (Emphasis omitted.) *Bennett*, 196 Ga. App. at 158-159.

[15] (Emphasis supplied.) *Coca-Cola Co.*, 215 Ga. App. at 382. See also *U. S.
Fidelity & Guaranty Co.*, 230 Ga. at 185.

[16] See *Bennett*, 196 Ga. App. at 159.

finding that wage liability was synonymous with the actual payment of wages to the injured employee. Thus, Aimwell argues, because the Appellate Division relied upon an erroneous legal theory, the superior court erred by applying the any-evidence standard of review.

Pursuant to OCGA § 34-9-103 (a), the Appellate Division of the Board reviewing the decision of an ALJ shall accept the ALJ's factual findings "where such findings are supported by a preponderance of competent and credible evidence contained within the records." The Appellate Division's review is limited to the record received before the ALJ, but

> the Appellate Division *must* weigh the evidence and assess the credibility of witnesses and, if it determines that the award of the ALJ is supported by a preponderance of admissible evidence, the ALJ's award will be accepted. But, if after assessing the evidence of record, the Appellate Division concludes that the award does not meet the statutes' evidentiary standards, the Appellate Division may substitute its own alternative findings for those of the ALJ, and enter an award accordingly. Although the Appellate Division's review is not strictly de novo, the Appellate Division is a trier of fact, authorized to assess witness credibility, weigh conflicting evidence, and draw factual

11

conclusions different from those reached by the ALJ who initially heard the dispute.[17]

"Erroneous applications of law to undisputed facts, as well as decisions based on erroneous theories of law, however, are subject to the de novo standard of review in the superior court."[18] Regardless of the standard of review stated in the superior court's order, "however, a ruling right for any reason will be affirmed."[19]

As discussed in Division 1, the rulings of the Appellate Division and the superior court were substantively correct. Thus, this enumeration presents no basis for reversal.[20]

---

[17] (Citation and punctuation omitted; emphasis in original.) *Bonus Stores, Inc. v. Hensley*, 309 Ga. App. 129, 131-132 (1) (710 SE2d 201) (2011).

[18] (Punctuation omitted.) *Stokes v. Coweta County Bd. of Educ.*, 313 Ga. App. 505, 506 (722 SE2d 118) (2012).

[19] (Punctuation omitted.) *Crossmark, Inc. v. Strickland*, 310 Ga. App. 303, 305 (1) (713 SE2d 430) (2011).

[20] See id.

3. McLendon and its insurer, FCCI Insurance Co., argue that the trial court erred by affirming the Appellate Division's conclusion that Gaffney was McLendon's borrowed servant at the time of his accident. Pretermitting the merit of this argument, our review of this enumeration will not affect the outcome of this case because the superior court concluded that Aimwell had sole compensation liability to Gaffney. Thus, this enumeration is moot, and we need not address it.

*Judgment affirmed. Andrews and Boggs, JJ., concur.*