**FIRST DIVISION
BARNES, P. J.,
GOBEIL and PIPKIN, JJ.**

**July 16, 2024**

# In the Court of Appeals of Georgia

A24A0103. GEORGIA INSURERS INSOLVENCY POOL v.
  CARPET CYCLE, LLC et al.

A24A0211. CARPET CYCLE, LLC et al. v. GEORGIA INSURERS
  INSOLVENCY POOL.

A24A0287. GEORGIA INSURERS INSOLVENCY POOL v. ZEP,
  INC.

GOBEIL, Judge.

At issue in these three appeals is the interpretation and interplay of the Georgia

Insurers Insolvency Pool Act, OCGA § 33-36-1 et seq. (the "Pool Act") and

Georgia's Workers' Compensation Act, OCGA § 34-9-1 et seq. (the "WCA").[1]

Specifically, in the context of a compensable workers' compensation claim, these

---

[1] Although Case No. A24A0287 is otherwise unrelated to A24A0103 and
A24A0211, we heard these cases together. All three involve the same core issues
regarding the Pool Act.

appeals require us to address the Georgia Insurers Insolvency Pool's (the "Pool") right to reimbursement from the solvent insurer of a business utilizing the services of a staffing company when the staffing company's insurer has become insolvent.

*Summary of the Cases Presented*

Briefly, as relevant to Case No. A24A0287, Jeffrey Ward sustained a compensable injury in July 2017. On the date of his injury, Ward was employed by North Georgia Staffing, Inc. ("NGS"), a temporary staffing company, and NGS had assigned him to work at a warehouse owned and operated by Zep, Inc. ("Zep"). NGS's workers' compensation insurer, Guarantee Insurance Company ("Guarantee"), accepted the claim as compensable and commenced payment of medical and indemnity benefits. After Guarantee was declared insolvent, the Pool assumed responsibility for Ward's claim as required by OCGA § 33-36-14 of the Pool Act. The Pool then sought reimbursement for all amounts it had paid toward Ward's claim from Zep's still-solvent insurer, New Hampshire Insurance Company ("NHIC").

The matter proceeded to a hearing before an administrative law judge ("ALJ") with the State Board of Workers' Compensation (the "Board"). The ALJ ruled that the Pool was not entitled to reimbursement from NHIC. The Board's Appellate

2

Division affirmed this ruling, and the Superior Court of Bartow County likewise affirmed the conclusion that the Pool was not entitled to reimbursement from NHIC. On appeal, the Pool argues that the superior court erred by (1) applying an "any evidence" standard to the Appellate Division's conclusions of law; (2) deferring to the Appellate Division's "flawed" interpretation of the Pool Act; (3) failing to consider Zep's liability as a statutory employer (OCGA § 34-9-11 (c)); (4) interpreting the Pool Act in a way that would permit businesses to enter into contracts that contravene the Pool Act's requirements; and (5) failing to apply the correct test to determine whether Ward was a borrowed servant of Zep at the time of his injury;

As relevant to Case Nos. A24A0103 and A24A0211, Jay Hall sustained a work-related injury in 2010 while performing work for Carpet Cycle, LLC ("Carpet Cycle"). At the time, he was employed by Aliyah Personnel, Inc. ("Aliyah"), a temporary staffing company that provided workers for companies including Carpet Cycle. Aliyah's insurer, Lumbermen's Underwriting Alliance ("Lumbermen's"), paid medical and indemnity benefits on Hall's workers' compensation claim. In 2016, Lumbermen's underwent liquidation, and the Pool took over administration of Hall's claim. The Pool then sought reimbursement from Carpet Cycle and its still-solvent insurer, Rochdale Insurance Company ("Rochdale").

3

An ALJ with the Board denied the Pool's request for reimbursement, and the Appellate Division and the Superior Court of Gordon County affirmed this denial. In Case No. A24A0103, the Pool appeals, raising the same arguments it raised in Case No. A24A0287. In addition, the Pool argues that the superior court erred by finding that the date of injury, rather than the date of insolvency, controls the analysis of Hall's employment status for purposes of the Pool Act.

In Case No. A24A0211, Carpet Cycle/Rochdale have filed a cross-appeal from the superior court's order, arguing that the Pool Act, as applied, is unconstitutional, and the superior court should have considered whether the Pool Act violates Carpet Cycle/Rochdale's constitutional rights to due process and access to the courts.

As explained more fully below, we affirm in Case No. A24A0287. In Case No., A24A0103, we affirm in part and reverse in part, and we agree with the Pool that the Board applied the wrong test in determining whether Hall was Carpet Cycle's borrowed servant at the time of his work injury. We therefore remand to the superior court with direction to remand to the Board. And, as explained below, we dismiss Carpet Cycle/Rochdale's cross-appeal in Case No. A24A0211.

*Standard of Review*

In reviewing a workers' compensation award, this Court must construe the evidence in the light most favorable to the party prevailing

before the appellate division. In addition, the findings of the Board, when supported by any evidence, are conclusive and binding, and neither the superior court nor this Court may substitute itself as a factfinding body in lieu of the State Board. But erroneous applications of law to undisputed facts, as well as decisions based on erroneous theories of law, are subject to a de novo standard of review.

*Cho v. Mountain Sweet Water, Inc.*, 322 Ga. App. 400, 400 (745 SE2d 663) (2013) (citation and punctuation omitted). "On appeal to this Court, our duty is not to review whether the record supports the superior court's decision but whether the record supports the initial decision of the [Board]." *Heritage Healthcare of Toccoa v. Ayers*, 323 Ga. App. 172, 174 (746 SE2d 744) (2013) (citation and punctuation omitted).

## The Georgia Insurers Insolvency Pool and the Pool Act

Before delving into the facts of these cases, we begin with some context: an overview of the Pool and the Pool Act. As we recently described in *Ga. Insurers Insolvency Pool v. DuBose*,

> The . . . Pool is a non-profit legal entity created by the Georgia General Assembly and governed by the Pool Act . . . . The Pool provides a limited safety net for insurers that experience liquidation. . . . When an insurance company is placed into liquidation, all existing claims of the insolvent carrier are transferred to the Pool by the liquidator and the Pool undertakes responsibility for the handling and administration of those

claims in keeping with the Pool Act. . . . The Pool is then responsible for the investigation, adjustment, compromise, settlement, and payment of covered claims; for the investigation, handling, and denial of noncovered claims; and for the management and investment of funds administered by the [P]ool.

349 Ga. App. 238, 241 (1) (825 SE2d 606) (2019) (citations and punctuation omitted). Further, the Pool is a "guarantor of last resort, providing benefits only when there is no other insurance available." Id. at 246 (1) (b).

Significantly, the Pool Act includes an exhaustion provision requiring a claimant to exhaust certain sources of insurance coverage before seeking payment of his or her claim from the Pool. OCGA § 33-36-14 (a). This subsection provides in relevant part:

[A]ny person having a claim against a policy or an insured under a policy issued by an insolvent insurer, which claim is a covered claim and is also a claim within the coverage of any policy issued by a solvent insurer, shall be required to exhaust first his or her rights under such policy issued by the solvent insurer. The policy of the solvent insurer shall be treated as primary coverage and the policy of the insolvent insurer shall be treated as secondary coverage and his or her rights to recover such claim under this chapter shall be reduced by any amounts received from the solvent insurers.

OCGA § 33-36-14 (a). The Pool Act also authorizes the Pool to seek reimbursement from solvent insurers to offset amounts the Pool paid to a claimant. OCGA § 33-36-14

(b).

In accordance with "the [ ] Pool Act, when an insurance company is placed into liquidation, the [ ] Pool becomes responsible for the handling and administration of the insolvent insurer's claims, and the [ ] Pool is deemed the insurer to the extent that such claims constitute 'covered claims' within the meaning of the [ ] Pool Act." *Palmer v. Ga. Insurers Insolvency Pool*, 361 Ga. App. 803, 804 (865 SE2d 623) (2021). Claims under a workers' compensation insurance policy "may fall within the meaning of a 'covered claim' as defined by the [ ] Pool Act." Id. The WCA, in turn, "is intended to provide a complete and exclusive system and procedure for the resolution of disputes between employers and employees who are subject to this chapter concerning accidents and injuries arising out of and in the course of employment[.]" OCGA § 34-9-23. Pursuant to the Pool Act, the WCA is applicable to the Pool. *Palmer*, 361 Ga. App. at 807.

*Factual and Procedural Background*

a. Case No. A24A0287

As relevant to Case No. A24A0287 and viewed in the light most favorable to Zep/NHIC, as the prevailing parties before the Board, the record shows that in July 2017, Zep and NGS entered into a contract (the "Personnel Agreement") under

7

which NGS agreed to provide temporary personnel services for assignment at Zep's warehouse. The contract provided that NGS would: recruit, hire, and assign all associates for Zep; be solely responsible for paying all associates; and provide workers' compensation insurance for NGS associates.

NGS hired Jeffrey Ward after he attended a job fair at Zep's warehouse. He attended a "new hire" orientation conducted by NGS, and was then placed to work at Zep as a reach truck/forklift operator. An NGS manager, Joel Orellana, was on-site at the Zep premises every day, and Orellana was each NGS employee's first point of contact as he or she arrived at the Zep facility each day.

On July 26, 2017, Ward sustained a compensable, work-related injury, which he reported to Orellana. Orellana completed an NGS "Supervisor's Report of Accident" form and took Ward to the hospital. At the time of Ward's injury, NGS had workers' compensation insurance with Guarantee, and Zep had workers' compensation insurance with NHIC. After Ward's injury, Guarantee filed a Form WC-1, Employer's First Report of Injury, in which it accepted the claim as compensable and commenced payment of temporary total disability benefits beginning July 31, 2017. At no time has Zep or NHIC paid income or medical benefits to Ward as it pertains to the July 2017 injury.

Guarantee became insolvent and went into liquidation in November 2017, and the Pool took over administration and payment of Ward's workers' compensation claim. In July 2018, Ward filed a hearing request with the Board, seeking to add Zep to the claim as a statutory employer.[2] Zep/NHIC controverted the claim in full on September 5, 2018.

On July 8, 2019, the Pool sought reimbursement from NHIC for amounts paid on Ward's claim on the grounds that the policy NHIC issued to Zep "would be primary because [Zep] would be considered a co-employer or statutory employer of Jeffrey Ward." Thereafter, the Pool requested a hearing before the Board to determine Zep's status as Ward's employer at the time of the injury. If Zep were determined to be Ward's employer for WCA purposes, then it reasons that Zep and NHIC would be responsible for Ward's claim and the Pool could recover the amounts it had paid on the claim pursuant to OCGA § 33-36-14 (a).

Following a hearing, the ALJ denied the Pool's request for reimbursement. As

---

[2] "[T]he statutory employer doctrine permits liability for workers' compensation benefits to attach vicariously against someone other than an injured employee's employer. In return, the vicariously liable party is immune from tort liability for the injury suffered." *Manning v. Ga. Power Co.*, 252 Ga. 404, 405 (314 SE2d 432) (1984). See also OCGA § 34-9-8 (a) ("A principal, intermediate, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of his subcontractors engaged upon the subject matter of the contract to the same extent as the immediate employer.").

an initial matter, the ALJ found that Ward was not Zep's borrowed servant, lent out from NGS, at the time of the injury, because both companies exercised some control over his work. The ALJ then found that NGS and Zep were joint employers for potential workers' compensation liability. According to the ALJ: NGS and Zep shared control of Ward's work; NGS and Zep had an arrangement whereby NGS would act as a "temporary help contracting firm" as defined by OCGA § 34-8-46[3]; and, a temporary help contracting firm is "deemed to be a statutory employer for purposes of this Chapter" pursuant to OCGA § 34-9-11 (c). Regarding liability arising under

_____

[3] OCGA § 34-8-46 provides:

As used in this chapter, the term "temporary help contracting firm" means any person who is in the business of employing individuals and, for compensation from a third party, providing those individuals to perform work for the third party under the general or direct supervision of the third party. Employment with a temporary help contracting firm is characterized by a series of limited-term assignments of an employee to a third party, based on a contract between the temporary help contracting firm and the third party. A separate employment contract exists between the temporary help contracting firm and each individual it hires as an employee. Completion of an assignment for a third party by an employee employed by a temporary help contracting firm does not, in itself, terminate the employment contract between the temporary help contracting firm and the employee.

joint employment, the ALJ cited OCGA § 34-9-224:

> Whenever any employee whose injury or death is compensable under this chapter shall at the time of the injury be in the joint service of two or more employers subject to this chapter, such employers shall contribute to the payment of such compensation in proportion to their wage liability to such employee; provided, however, that nothing in this Code section shall prevent any reasonable arrangement between such employers for a different distribution as between themselves of the ultimate burden of compensation.

The ALJ explained that NGS paid all of Ward's wages, and NGS and Zep arranged that NGS would be liable for workers' compensation benefits. Therefore, the ALJ concluded, NGS was responsible for all of Ward's workers' compensation benefits. And, because Zep had no liability for such benefits, Ward did not have a "covered claim" that was "within the coverage" of Zep's policy with NHIC, and the Pool could not recover from Zep or NHIC under OCGA § 33-36-14.

The Pool appealed to the Board's Appellate Division, which adopted in part and reversed in part the ALJ's award. More specifically, the Appellate Division agreed with the ALJ's conclusion that Zep had no workers' compensation liability for Ward's injury, and agreed with the ALJ's findings that (1) NGS was a temporary help contracting firm as defined by OCGA § 34-8-46, and (2) NGS was a statutory employer pursuant to OCGA § 34-9-11 (c). In addition, the Appellate Division

11

affirmed the ALJ's finding that Ward was not a borrowed servant, citing evidence that NGS had the sole right to terminate Ward's employment.

With regard to the ALJ's finding that NGS and Zep were joint employers, however, the Appellate Division reversed. In doing so, the Appellate Division explained that unlike professional employer organizations or employee leasing companies — which under OCGA § 34-7-6 are considered co-employers — temporary help contracting firms are in the business of employing individuals and, for compensation from a third party, providing those individuals to perform work for the third party under the general or direct supervision of the third party.[4] The Appellate Division ruled that the fact that Zep exercised some control over Ward's work did not necessitate a finding of co-employment or joint employment, and Zep was allowed to exercise such control as a third party using the services of a temporary help contracting firm. The fact that NGS is deemed a statutory employer by virtue of OCGA § 34-9-11 (c) did not demand a finding of joint employment between Zep and NGS.

Because Zep was merely a third-party business using the services of a temporary help contracting firm, the Appellate Division concluded that there was never any

---

[4] The Pool does not challenge this ruling on appeal.

employment relationship between Ward and Zep. The Appellate Division ruled that on the date of injury, the only liable employer and insurer were NGS and Guarantee, and Ward's injury was not "a covered claim under [NHIC's] policy[.]" The Appellate Division highlighted that nothing about Ward's employment relationship with Zep had changed after the date of injury. Rather, "the only thing that changed . . . was that Guarantee [ ] became insolvent[.]" Thus, the Appellate Division denied the Pool's request for reimbursement from Zep.

The Pool appealed to the Superior Court of Bartow County, which affirmed the Appellate Division's ruling in its entirety. The Pool then filed an application for discretionary review, which we granted, and the appeal in Case No. A24A0287 followed.

b. Case Nos. A24A0103 and A24A0211

As relevant to Case Nos. A24A0103 and A240211, the facts, viewed in the light most favorable to the Appellate Division's award, show the following. In 2010, Hall was contacted by his brother-in-law about performing some work at a carpet mill. Specifically, the work entailed operating a carpet shearer and then dismantling the machinery to be shipped to a different location. Sean Ragiel, Carpet Cycle's principal, owned the equipment and instructed Hall on what to do. Initially, Ragiel paid Hall $10

13

per hour in cash. He then instructed Hall (and the other workers Hall had recruited for the job) to go to Aliyah's office to fill out paperwork so they would be covered by Aliyah's workers' compensation insurance. After he completed the paperwork, Hall received his paycheck from Aliyah. Hall did not receive instructions, training, or have other communications with Aliyah aside from turning in time cards and getting his paycheck.

Aliyah's representative testified at the hearing before the ALJ, and although she could not remember Hall or Carpet Cycle, she testified as to her knowledge of Aliyah's general business practices.[5] As relevant here, Aliyah provided staffing services, specifically industrial placement of employees, to client companies like Carpet Cycle. After Aliyah received an application from the client company, it would contact its workers' compensation insurer to ascertain that the company would be covered. The client companies determined how much workers were paid and what their hours were. Aliyah paid the workers, and charged the client companies a fee in exchange for handling the payroll and providing workers' compensation insurance coverage; indeed, Aliyah, through Lumbermen's, provided workers' compensation

---

[5] Aliyah retained paper documents for seven years, after which time a shredding company would destroy all records except for client applications. As a result, at the time of the proceedings below, Aliyah did not have access to its records pertaining to Carpet Cycle or Hall's workers' compensation claim.

insurance coverage for Hall in this case.

On December 21, 2010, Hall was injured while breaking down equipment at the job site. After his injury, Aliyah sent Hall to attempt a light-duty job performing office/filing work at Aliyah. After Hall hired an attorney, Aliyah/Lumbermen's ultimately paid medical and income benefits on Hall's claim.

Lumbermen's became insolvent and went into liquidation in May 2016, and the Pool took over administration and payment of Hall's workers' compensation claim. In May 2019, the Pool requested reimbursement from Carpet Cycle for the amounts it paid on Hall's claim, including attorney fees incurred in defending the claim.[6] Carpet Cycle/Rochdale filed a Form WC-14 requesting a hearing on the constitutionality of the Pool Act, and raised the issue before the ALJ at the hearing. In its request for a hearing, the Pool also sought a determination as to the identity of Hall's employer at the time of the injury, such that the Pool could recover from Carpet Cycle the amounts it had paid on the claim pursuant to OCGA § 33-36-14 (a).

Following the hearing, the ALJ denied the Pool's request for reimbursement from Carpet Cycle/Rochdale. As an initial matter, the ALJ found that Hall was not

---

[6] In October 2020, Hall's benefits were suspended because the entire permanent partial disability benefit had been paid. Hall later sought a ruling designating his injuries as catastrophic (see OCGA § 34-9-200.1 (g) (6)), but the ALJ denied this request, and the Appellate Division affirmed.

Carpet Cycle's borrowed servant, lent out from Aliyah, at the time of the injury, because both companies exercised some control over his work. While Carpet Cycle exercised the majority of the day-to-day supervision about the details of Hall's work, the ALJ found that Aliyah retained and exercised some control in that Hall had ongoing reporting responsibilities to Aliyah, Aliyah retained the ability to terminate him, and Aliyah paid him. The ALJ also stated that: the testimony of Aliyah's agent showed that Aliyah had some continued involvement and interaction with its assigned employees, which constituted some ongoing control of those employees; and that Hall returned to work at the Aliyah office shortly after his injury, which showed general control over him by Aliyah.

Further, the ALJ found that Carpet Cycle and Aliyah were joint employers for potential workers' compensation liability. Because Aliyah paid all of Hall's wages, and Aliyah and Carpet Cycle arranged for Aliyah to provide workers' compensation coverage, the ALJ concluded that Aliyah was responsible for all of Hall's workers' compensation benefits. And, because Carpet Cycle had no liability for such benefits, Hall did not have any "covered claim" that was "within the coverage" of Carpet Cycle's policy with Rochdale. Accordingly, the Pool was not entitled to reimbursement from Carpet Cycle under OCGA § 33-36-14.

The Pool appealed to the Appellate Division, and Carpet Cycle/Rochdale filed a cross-appeal on the issue of the constitutionality of the Pool Act as applied to the facts surrounding Hall's claim. The Appellate Division adopted in part and reversed in part the ALJ's award. In relevant part, the Appellate Division agreed with the ALJ's finding that Hall was not a borrowed servant of Carpet Cycle, because Aliyah did not relinquish complete control of him to Carpet Cycle. It also agreed with the ALJ's conclusion that Carpet Cycle had no workers' compensation liability for Hall's injury.

However, the Appellate Division reversed the ALJ's finding that Aliyah and Carpet Cycle were joint employers. In addition, the Appellate Division stated that just because Carpet Cycle exercised some control over Hall's work did not necessitate a finding of co-employment or joint employment; and, in fact, Carpet Cycle was allowed to exercise such control pursuant to OCGA § 34-8-46 — as a third party using the services of a temporary help contracting firm. The Appellate Division also ruled that joint employment did not exist between Aliyah and Carpet Cycle simply because Aliyah was a statutory employer pursuant to OCGA § 34-9-11 (c).

The Appellate Division concluded that there was never any employment relationship between Hall and Carpet Cycle — Carpet Cycle was merely a third-party business using the services of a temporary help contracting firm. In support, the

Appellate Division cited evidence that: Hall applied for a job with Aliyah, was paid by Aliyah, considered himself to be an employee of Aliyah, visited Aliyah's office to turn in time sheets and pick up paychecks, and returned to work for Aliyah after his accident; and, that Aliyah provided workers' compensation insurance coverage for and could terminate its employees. The Appellate Division ruled that on the date of injury, the only liable employer and insurer were Aliyah and Lumbermen's, and Carpet Cycle and Rochdale had no liability whatsoever. Thus, the Appellate Division denied the Pool's request for reimbursement from Carpet Cycle.

In its award, the Appellate Division declined to address the constitutionality of the Pool Act, but highlighted the potential due process implications that could arise if the Pool Act permitted the Pool to seek reimbursement years after the date of injury. Specifically, the Appellate Division noted that "on the date of injury, Carpet Cycle and Rochdale had no exposure in this matter and did not contemplate setting reserves, contacting witnesses, preserving evidence, determining a statute of limitation date for a non-covered claim, etc."

The Pool appealed to the Superior Court of Gordon County, which affirmed the Appellate Division's ruling. At the hearing, counsel for Carpet Cycle/Rochdale reiterated its challenge to the constitutionality of the Pool Act, arguing that the Pool's

proposed application of the Pool Act would violate due process. The superior court affirmed the decision of the Appellate Division, explaining that it agreed with the Appellate Division's determination that the date of Hall's injury, and not the date of Lumbermen's liquidation, controlled the analysis of Hall's employment. And, because Carpet Cycle was not an employer under workers' compensation law on the date of the injury, Rochdale did not qualify as a solvent insurer under the Pool Act, and the Pool could not recover from Carpet Cycle. Thus, the superior court found it unnecessary to rule on the constitutional challenge to the Pool Act.

The Pool then filed an application for discretionary review, which we granted, and the Pool appealed in Case No. A24A0103. In Case No. A24A0211, Carpet Cycle/Rochdale filed a cross-appeal pertaining to the constitutionality of the Pool Act.

*Analysis*

1. *The Pool's Alleged Errors Concerning the Standard of Review in Case Nos. A24A0287 and A24A0103*

In each of these two cases, the Pool first argues that the superior court erred by applying a deferential standard of review to the Appellate Division's conclusions of law.[7] Specifically, the Pool contends that the superior court should have applied a de

---

[7] The Pool's arguments in Case Nos. A240287 and A24A0103 are nearly identical, and will be addressed together to the extent possible.

novo standard of review instead of an "any evidence" standard because the Appellate Division's award contained legal errors. We discern no error.

The Pool is correct that a de novo standard of review applies to the Appellate Division's conclusions of law, and the superior courts in these cases correctly noted that an any evidence standard applies to the Appellate Division's findings of fact. *Cho*, 322 Ga. App. at 400. Contrary to the Pool's argument, however, the superior court in each of these cases did not apply an any evidence standard to the Appellate Division's conclusions of law. Instead, these courts noted that, "[w]hen applying the findings of fact to the Appellate Division's conclusions of law, [the superior court] does not find that there are grounds to reverse the decision of the Appellate Division." Thus, although the superior courts did not expressly state that they were applying a de novo standard of review to the Board's conclusions of law, there is nothing in the orders to indicate otherwise. In any event, "[r]egardless of the standard of review set forth in the superior court's order, however, a ruling right for any reason will be affirmed." *Aimwell, Inc. v. McLendon Enterprises, Inc.*, 318 Ga. App. 394, 400 (2) (734 SE2d 84) (2012) (citation and punctuation omitted). Accordingly, we affirm the superior courts on this issue.

2. *The Pool's Alleged Error Concerning the Appellate Division's "Flawed"*

20

*Interpretation of the Pool Act in Case No. A24A0287*

Next, the Pool argues that the superior courts erred by deferring to the Appellate Division's "flawed" interpretation of the Pool Act.[8] We disagree.

As noted above, the exhaustion provision set forth in OCGA § 33-36-14 (a) is triggered when a person has (1) "a claim against a policy or an insured under a policy issued by an insolvent insurer," and (2) such "claim is a covered claim and is also a claim within the coverage of any policy issued by a solvent insurer[.]" According to the Pool, this language means that, as of the date of Guarantee's insolvency, NHIC's policy should be treated as primary coverage such that the Pool is entitled to reimbursement for the amounts that it has paid to Ward. Zep/NHIC counter that because Ward did not have an employment relationship with Zep at the time of his injury, his claim is not a "claim within the coverage of" the policy issued by NHIC.

In determining the effect of statutes such as the Pool Act and the WCA, we presume that "the General Assembly meant what it said and said what it meant." *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (citation and punctuation omitted). To that end, we afford the statutory text "its plain and ordinary meaning," and we read that text in the "most natural and reasonable way, as an ordinary speaker

---

[8] The Pool raised the same argument related to the Board's interpretation of the Pool Act in Case No. A24A0103, and we address it in Division 5 (b), infra.

of the English language would." Id. at 172-173 (1) (a) (citations and punctuation omitted). The Pool Act expressly requires that a claim fall "*within the coverage* of any policy issued by the solvent insurer[.]" OCGA § 33-36-14 (a) (emphasis supplied). This language is unambiguous. In short, the Pool's right to reimbursement turns on whether Ward's claim was within the coverage of the solvent insurer's policy. As discussed in Division 5 (a), infra, there was ample evidence to support the Appellate Division's conclusion that there was no employment relationship between Ward and Zep. Importantly, the Pool has failed to point to language in NHIC's policy that would require it to provide workers' compensation benefits to associates with whom Zep had no employment relationship. The mere fact that Zep's insurer remains solvent does not transform Ward's claim into a covered claim, and we find no error in the Appellate Division's interpretation of the Pool Act in this regard.

3. *The Pool's Alleged Errors Surrounding the Application of OCGA § 34-9-11 (c) in Case Nos. A24A0287 and A24A0103*

The Pool also argues that the superior courts erred by failing to consider whether a business utilizing the services of a temporary help contracting firm is liable for workers' compensation benefits by virtue of OCGA § 34-9-11 (c). We find no error.

22

As a general principle, OCGA § 34-9-11 (a) provides that the WCA is the exclusive remedy for a worker who sustains an injury arising out of and in the course of employment. "When an employee's injuries are compensable under the [WCA], the employee is absolutely barred from pursuing a common law tort action to recover from such injuries[.]" *Kellogg Co. v. Pinkston*, 253 Ga. App. 190, 191 (1) (558 SE2d 423) (2001) (citation omitted). In 1995, the General Assembly extended this tort immunity to "businesses using the services of a temporary help contracting firm . . . or an employee leasing company," *provided that* workers' compensation benefits are furnished by *either*: (1) a temporary help contracting firm or an employee leasing company; or (2) a business using the services of either such firm or company. OCGA § 34-9-11 (c). In addition, under OCGA § 34-9-11 (c), "[a] temporary help contracting firm . . . shall be deemed to be a statutory employer for the purposes of this chapter." Subsection (c) does not, however, state that the business using the services of a temporary help contracting firm is considered to be a statutory employer for purposes of the WCA.

According to the Pool, Zep and Carpet Cycle cannot enjoy tort immunity unless they are also responsible for workers' compensation coverage for employees, such as Ward and Hall, who sustain injuries while on assignment from a staffing agency.

23

In addition to the above-cited rules of statutory construction, we are mindful that "[w]hen a statute is amended, from the addition of words it may be presumed that the legislature intended some change in the existing law." *Glass v. Faircloth*, 354 Ga. App. 326, 331 (2) (840 SE2d 724) (2020) (citation and punctuation omitted).

Employing these rules, we find that the language of OCGA § 34-9-11 (c) is plain, unambiguous, and clearly extends tort immunity to businesses using the services of staffing companies — so long as either the business or the staffing company obtains coverage required by the WCA, as was the case here. See *SecureAlert, Inc. v. Boggs*, 345 Ga. App. 812, 821 (815 SE2d 156) (2018) ("We must assume that the General Assembly weighed the costs and the benefits before enacting the statute."); see also *Aimwell, Inc.*, 318 Ga. App. at 396-397 (1) (interpreting statutes "requires us to follow the literal language of the statute unless it produces contradiction, absurdity, or such an inconvenience as to insure that the legislature meant something else") (citation and punctuation omitted).

Nevertheless, the Pool maintains that the purposes of the WCA would be undermined if, for example, "Guarantee[/Lumbermen's] was still solvent but NGS[/Aliyah] simply allowed their coverage to lapse, without a finding that Zep[/Carpet Cycle] as a client company was obligated as a statutory employer to step

24

in [and] provide coverage[.]" The Pool maintains that such a scenario would leave the employees without benefits, and also without the ability to bring a tort action against Zep and Carpet Cycle. This argument is unavailing.

The Pool's hypothetical conflates the insolvency of an insurer with an employer's failure to obtain workers' compensation coverage in the first instance. While the former situation is governed by the Pool Act, the latter situation is controlled by Article 4 of the WCA, OCGA § 34-9-120 et seq. "The [WCA] requires that employers insure the payment of workers' compensation benefits to injured workers, either by procuring insurance or by qualifying as a self-insurer." *Sheehan v. Delaney*, 238 Ga. App. 662, 662 (1) (521 SE2d 585) (1999). If an employer fails to obtain workers' compensation coverage or allows the coverage to lapse, "the employer remains liable for payment of benefits." Id. Thus, the WCA provides a remedy in the event that an employer fails to comply with its obligation to obtain workers' compensation coverage. In light of the foregoing and given the particular facts of these cases, we affirm the Appellate Division's conclusion that OCGA § 34-9-11 (c) does not impose workers' compensation liability on Zep and Carpet Cycle.

4. *The Pool's Alleged Errors Regarding "Contracting Around" Requirements of the Pool Act in Case Nos. A24A0287 and A24A0103*

The Pool also argues that the superior court in each of these cases erred by failing to consider whether parties can contract around the requirements of the Pool Act. Specifically, the Pool argues that allowing a business to agree that a staffing company will provide workers' compensation coverage is an impermissible contractual provision contravening the Pool Act. We disagree.

First, "all statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it." *Glass*, 354 Ga. App. at 331 (2) (citation and punctuation omitted). Here, the WCA contemplates that, in certain circumstances, parties may enter into agreements for a particular entity to be responsible for obtaining workers' compensation coverage. See, e.g., OCGA §§ 34-9-11 (c); 34-9-224. These statutes do not carve out limitations based upon the requirements of the Pool Act, and "we will not read into the Code a limitation that is absent." *Glass*, 354 Ga. App. at 332 (2); see also *Chase v. State*, 285 Ga. 693, 698 (2) (681 SE2d 116) (2009) (in interpreting statutes, we will not "usurp the General Assembly's legislative role by engrafting" language from one Code section onto another).

5. *The Pool's Alleged Errors Concerning the Appellate Division's Employment Relationship Findings in Case Nos. A24A0287 and A24A0103*

In related claims of error, the Pool challenges the Appellate Division's conclusion that the respective employees, Ward and Hall, did not have employment relationships with the businesses, Zep and Carpet Cycle, at the time of their respective injuries. In particular, the Pool argues that the Appellate Division failed to analyze the factors relevant to determining an employee's status as a "borrowed servant." The Pool contends that the Board focused on the general work relationship, respectively, between the employees (Ward and Hall), the businesses (Zep and Carpet Cycle), and the staffing companies (NGS and Aliyah). The Pool maintains that the proper inquiry is which entity exercised control over Ward and Hall at the time of their injuries.

Under the borrowed servant doctrine, "if an employee is injured while in the employ of his special (or 'borrowing') employer, he is precluded from bringing a tort action against the special employer and must proceed under the Workers' Compensation Act [the "WCA"]." *Aimwell, Inc.*, 318 Ga. App. at 398 (1) (footnotes omitted). An employee who is "working as a borrowed servant[ ] may recover for injuries sustained in connection with his work from either his general or special employer, or in some instances, both. Such recovery, however, is limited to those benefits available under workers' compensation law." Id. at 398-399 (1) (citation, punctuation and emphasis omitted).

In order for an employee to be a borrowed employee, the evidence must show that (1) the special master had complete control and direction of the servant for the occasion; (2) the general master had no such control; and (3) the special master had the exclusive right to discharge the servant. All three prongs of the test must focus on the occasion when the injury occurred rather than the work relationship in general. And, where the contract between the two employers explicitly sets forth each requirement of the borrowed servant doctrine, the contract between the parties is controlling as to their responsibilities thereunder.

*Healthcare Staffing, Inc. v. Edwards*, 360 Ga. App. 131, 133 (1) (860 SE2d 874) (2021) (citations and punctuation omitted).

(a) *Case No. A24A0287*

In Case No. A24A0287, the Pool cannot establish the third prong of the borrowed servant analysis. Hence, we find no error in the decision on this issue.

Under the third prong of the borrowed servant doctrine, the borrowing employer must have "the exclusive right to discharge the servant." *Healthcare Staffing, Inc.*, 360 Ga. App. at 133 (1). We have interpreted this prong as meaning the "unilateral right to discharge, as opposed to the sole right to discharge." Id. The Personnel Agreement between Zep and NGS provides as follows with regard to assignment, discipline, and dismissal of NGS employees placed at Zep:

> 8. *Assignment of Associates.* . . . ZEP[ ] shall have the right to

28

request disciplinary action including dismissal of personnel [ ]; however, [NGS] shall handle all such disciplinary action. NGS will use its best efforts to work with ZEP[ ] to resolve employment issues including but not limited to issues related to disability, [Family and Medical Leave Act], investigations, or any violation of [Zep's] policies including its Code of Conduct.

Notably, the Personnel Agreement lacks any requirement that NGS honor a request from Zep to discipline or terminate an employee. Nor does the Personnel Agreement specify that Zep may unilaterally decide to terminate an NGS employee on assignment to Zep. Indeed, the Personnel Agreement specifically provides that NGS has the sole authority to fire employees it provides to Zep. Moreover, the Personnel Agreement expressly disclaims NGS's liability for any loss or liability resulting from Zep's "making substantial changes in the Assigned Associate's job duties or risks without NGS's prior written approval." In addition, the Appellate Division cited evidence (adduced at the hearing before the ALJ) that an NGS manager was on-site each day at the Zep warehouse, and the manager would need to be consulted if Zep wanted to reassign an NGS worker to a different department in the warehouse. In light of the foregoing, there is evidence to support the Appellate Division's conclusion that Ward was not a borrowed servant at the time of his injury, and the superior court did not err in upholding the Appellate Division's decision that

29

the Pool was not entitled to reimbursement from Zep/NHIC. See *Healthcare Staffing, Inc.*, 360 Ga. App. at 134-135 (1) (concluding that borrowed servant doctrine did not apply where contract between heath facility and healthcare personnel contractor did not give health facility exclusive right to discharge contractor's employees, but merely allowed heath facility to request removal of contractor's personnel).

In light of the foregoing, in Case No. A24A0287, we affirm the Superior Court of Bartow County's order affirming the award of the Appellate Division.

(b) *Case No. A24A0103*

In Case No. A24A0103, the Appellate Division based its conclusion that Hall was not Carpet Cycle's borrowed servant on evidence that Aliyah (1) had some ongoing involvement and interaction with its assigned employees; (2) retained the ability to terminate Hall's employment; and, (3) exercised its right to assign Hall to other work. However, all three prongs of the borrowed servant test must focus on "the occasion when the injury occurred," as opposed to the work relationship in general. *Garden City v. Herrera*, 329 Ga. App. 756, 759 (1) (766 SE2d 150) (2014) (citation and punctuation omitted). As the factors relied upon by the Appellate Division relate to the general work relationship between Hall and Carpet Cycle on the date of his injury, we find that it erred.

Here, the evidence showed that Hall filled out paperwork with Aliyah so he could be covered by workers' compensation insurance, he brought his time cards to Aliyah's office, and Aliyah paid him for his work. Although this evidence is relevant to the general nature of Hall's employment relationship with Aliyah, it does not support a finding that Aliyah controlled Hall's work on the day he was injured. Rather, the evidence is uncontradicted that Aliyah did not provide instructions regarding the work, did not provide an on-site supervisor, and Aliyah personnel did not visit the job site or otherwise provide any direction to Hall regarding his work for Carpet Cycle. With regard to the right to discharge, Aliyah's representative testified that client companies such as Carpet Cycle had authority to fire employees, and the companies were not required to notify or seek permission from Aliyah to terminate an employee's employment. This evidence demonstrates that Hall was Carpet Cycle's borrowed servant at the time of his injury. See *Healthcare Staffing, Inc. v. Edwards*, 360 Ga. App. 131, 133 (1) (860 SE2d 874) (2021) (requirement that borrowing employer have "the exclusive right to discharge the servant" means the "unilateral right to discharge, as opposed to the sole right to discharge"); *Stalwart Films, LLC v. Bernecker*, 359 Ga. App. 236, 240-242 (1) (855 SE2d 120) (2021) (stunt performer, though not a direct employee of film company, was borrowed servant of film company at time of his fatal

injury because film company controlled time, method, and manner of performer's work, performer was directed as to exactly how he should appear during stunt sequence, he had specific call time each day, and he did not have authority to change time when he could perform); *Coca-Cola Co. v. Nicks*, 215 Ga. App. 381, 381-382 (450 SE2d 838) (1994) (evidence — that employee of temporary employment agency (who was assigned to work for corporation) was trained, supervised, and given assignments by corporation's personnel, worked alongside corporation's employees at same tasks, and was subject to corporation's exclusive authority to terminate her employment — showed that she was borrowed servant of corporation). Accordingly, we reverse the Board's conclusion that Hall was not Carpet Cycle's borrowed servant on the date of his injury.[9]

However, contrary to the Pool's argument, our determination — that Hall was Carpet Cycle's borrowed servant on the date of injury — does not demand the conclusion that his claim fell under the policy issued by Rochdale to Carpet Cycle and

---

[9] The Pool's argument — that the date of insolvency, rather than the date of injury, controls for purposes of establishing the Pool's right to reimbursement — misses the mark. Neither party argues that Hall had an employment relationship with either Aliyah or Carpet Cycle on the date of Lumbermen's liquidation in 2016. The Appellate Division and the superior court thus were correct to focus on the date of injury. Therefore, this claim of error does not alter the outcome of this case, nor does it provide grounds for reversal.

thus was a "covered claim" within the meaning of OCGA § 33-36-14 (a). Instead, resolution of that issue turns on whether and to what extent the WCA requires a borrowing employer to carry workers' compensation coverage where, as here, (1) the borrowing employer (Carpet Cycle) contracted with the lending employer (Aliyah) to maintain workers' compensation coverage, (2) the lending employer did in fact have coverage on the date of accident, (3) and the lending employer paid workers' compensation benefits to the employee.

Because the Board found that Hall was not Carpet Cycle's borrowed servant on the date of accident, it did not reach these issues. We therefore remand Case No. A24A0103 to the Superior Court of Gordon County with instruction to remand to the Board for further proceedings not inconsistent with this opinion.

*Case No. A24A0211*

6. *Cross-Appeal Regarding Constitutional Challenges in Case No. A24A0211*

In its cross-appeal, Carpet Cycle/Rochdale argues that the superior court should have considered the constitionality of the Pool Act as applied to businesses and their solvent insurers. Specifically, they cite the due process concerns that would arise if this Court adopts the Pool's proposed interpretation of the Pool Act. They contend that these concerns are highlighted by Hall's claim — where he was injured in 2010

33

and Carpet Cycle/Rochdale were not notified of the Pool's intent to seek reimbursement until 2019. The cross-appellants contend that allowing the Pool to proceed in such a manner, without regard to any statute of limitation, would hinder their ability to defend a claim due to the passage of time and similar considerations.

However, "appellate courts will not rule on a constitutional question unless it clearly appears in the record that the trial court distinctly ruled on the point[.]" *Price v. Grehofsky*, 349 Ga. App. 214, 222 (2) (825 SE2d 594) (2019) (citation and punctuation omitted). Here, the superior court affirmed the decision of the Appellate Division, and thus found it unnecessary "to rule on the constitutional challenge raised in the cross-appeal of Carpet Cycle[ ], Rochdale [ ], and AmTrust [ ]." Accordingly, "we do not reach th[ese] enumeration[s] of error or transfer the case to our Supreme Court." Id. In any event, in light of our remand in Case No. A24A0103, a ruling on Carpet Cycle/Rochdale's constitutional challenges to the Pool Act would be premature, and we dismiss the cross-appeal.

*Judgment affirmed in Case No. A24A0287. Judgment affirmed in part and reversed in part and case remanded in Case No. A24A0103. Appeal dismissed in Case No. A24A0211. Barnes, P. J., and Pipkin, J., concur.*